[No. 4332.]

## SOCRATES HUFF v. C. W. DOYLE AND CHARLES BALES.

STATE SELECTION OF PUBLIC LAND.—The selection and sale of public land,
before the same has been surveyed, claimed by a State under a con-
gressional grant, is void.

ACT OF 1866 CONFIRMING STATE SELECTIONS OF LANDS.—The Act of Congress
of July 23, 1866, confirming sales of public lands made by the State of
California, does not confirm selections of lands made by the State which,
at the time of the passage of the act, were claimed under a valid Mex-
ican grant, but which were afterwards excluded from the rancho by the
finally confirmed survey.

IDEM.—The listing and certifying such lands over to the State by the Com-
missioner of the General Land Office is unauthorized and void, and a
patent therefor afterwards issued by the State does not convey any
title.

IDEM.—Such lands remain public lands notwithstanding they have been
listed over and certified to the State; and a qualified pre-emptor who
enters upon a quarter section of the same when in the prior possession
of the State patentee, will hold the possession as against the State
patentee, if he enters in good faith to pre-empt the same.

PRE-EMPTION RIGHTS.—A qualified pre-emptor may enter upon public land of
the United States, as against one whose only right is that of a prior pos-
sessor, and may hold the same until he can prove up and pay for the
land.

APPEAL from the District Court, Third Judicial District,
County of Alameda.

Ejectment to recover the east half of section 24, township
three south, range two east, Mount Diablo meridian, lying

in the county of Alameda. The defendant Doyle was in the possession of the north half, and the defendant Bales of the south half of the demanded premises. In 1863 the State of California, in part satisfaction of the grant of the sixteenth and thirty-sixth sections, or other lands in lieu thereof, selected and located the demanded premises as lieu lands, and sold the same to the plaintiff, who paid the purchase-price and received a certificate of purchase. In 1865, he went into possession of the land, and remained in possession until November 1, 1870, when he was ousted by the defendants. The land is located in Livermore Valley, and one Robert Livermore, prior to the acquisition of California by the United States, had obtained a grant of land in the valley, called "Los Pocitas." Prior to 1860, this grant had been confirmed by the courts of the United States. The following is the description contained in the decree of confirmation:

"The land of which confirmation is hereby made is known as 'Los Pocitas,' and is bounded and described as follows, to wit: On the north, by the Somas de las Cuevas; on the east, by the Sierra de Buenos Ayres; on the south, by the dividing-line of the Establishment of San Jose, and on the west, by the Rancho of Don Jose Dolores Pacheco, containing, in all, two square leagues, a little more or less, provided that quantity be contained within the boundaries named, and if less than that quantity be contained therein, then that less quantity is hereby confirmed."

The area of land embraced by the boundaries in the decree was from ten to twelve square leagues, embracing the greater portion of the valley. In 1865, a survey of the grant was made, and approved by the Surveyor-General of the United States for California, which contained about nine square leagues, and included the demanded premises. This survey was approved by the Surveyor-General, but was afterwards, in 1868, set aside by the Commissioner of the General Land Office and the Secretary of the Interior, and a new survey was directed to be made, which should contain but two square leagues. In 1869, the Surveyor-General made a new survey which contained but two square leagues,

and approved the same on the 11th of May, 1870. An appeal was taken to the Commissioner of the General Land Office and he confirmed the survey, and, on appeal to the Secretary of the Interior, he confirmed the survey on the 6th of June, 1871, and a patent was issued to the claimants of "Los Pocitas," which did not embrace the demanded premises. In 1869, the township embracing the premises in controversy was surveyed, but the plat of the survey was not filed in the local land office at San Francisco until the 28th day of June, 1871. On the 15th day of November, 1871, the Commissioner of the General Land Office listed and certified over to the State of California the demanded premises. On the 23d of July, 1866, Congress passed an act confirming to the State of California selections which the State had made of any portion of the public domain in part satisfaction of any grant made to the State by any act of Congress where the State had sold the same to purchasers in good faith, but there was the following proviso to the act:

"*No selection* made by said State, contrary to existing laws, *shall be confirmed by this act* for lands to which any adverse pre-emption, homestead or other right has, *at the date of the passage of this act,* been acquired by any settler under the laws of the United States, or to any lands which have been reserved for naval, military or Indian purposes by the United States, or to any mineral land, or to *any land held or claimed under any valid Mexican or Spanish grant.*"

The third section of the act provides that where the State has selected and sold lands which have not been surveyed by the authority of the United States, such selections shall give the purchaser from the State the same right as a pre-emptioner upon unsurveyed public lands, and that when the land is surveyed by the United States, the holder of the State title may prove up his purchase and claim within the time allowed pre-emptioners to prove up, and when the proofs are made, the land shall be certified over to the State by the Commissioner of the General Land Office. The act of Congress of August 3, 1854 (10 Stats. at Large, 346), reads as follows:

" In all cases where lands have been, or shall hereafter be granted by any law of Congress, to any State or Territory, and when said law does not convey the fee-simple title of such lands, or require patents to be issued therefor, the lists of such lands which have been or may hereafter be certified by the Commissioner of the General Land Office, under the seal of his office, either as originals, or copies of the originals or records, shall be regarded as conveying the fee simple of all the lands embraced in such lists as are of the character contemplated by such act of Congress and intended to be granted thereby; but when lands embraced in such lists are not of the character embraced by such acts of Congress, and are not intended to be granted thereby, said lists, so far as these lands are concerned, shall be perfectly null and void, and no right, title or interest shall be conveyed thereby."

The plaintiff, on the 10th day of July, 1871, applied to prove up his claim and purchase under the third section of said act of 1866, and, on the 15th day of November, 1871, the United States approved the selection by the State, and listed and certified over the land to the State of California. On the 29th of November, 1871, the State issued to the plaintiff a patent. The defendants were qualified pre-emptors, and, on the 29th of June, 1871, filed their declaratory statements as pre-emptioners, and, on the 4th day of December, 1871, tendered to the Register proofs of their settlement and improvements, and offered to pay for the land, but the Register refused to approve of their pre-emption claims or to receive the money. This action was commenced on the 24th of June, 1873. The court below rendered judgment for the plaintiff, and the defendants appealed.

*Foote & Carter,* for the Appellants.

The location and selection of the land was void. (*Terry* v. *Megerle,* 24 Cal. 609; *Grogan* v. *Knight,* 27 Cal. 515.)

The Confirmatory Act of Congress passed in 1866 did not confirm the title to lands *claimed under a valid Mexican grant.* The demanded premises were within the limits of

land *claimed* under a valid Mexican grant, and did not come within the granting clause of the act. These lands were at all times, to the 6th day of June, 1871, reserved from disposition. The State was a trespasser when she made her location; the plaintiff was a trespasser when he went upon the land for the purpose of cultivation, and during the whole time of his possession, from 1865 to 1870. (*Mahoney* v. *Van Winkle*, 21 Cal. 552.)

It is well settled that a prior possessor may maintain ejectment against one entering upon his possession without right or title, but not so when the party entering is in privity with the source of title, and this Court has several times declared that a pre-emptor may enter upon the prior and actual possession of a mere possessor without right. (*Page* v. *Hobbs*, 27 Cal. 483; *Kile* v. *Tubbs*, 28 Cal. 402; *Tyler* v. *Green*, 28 Cal. 406.)

On the 6th of June, 1871, the survey of the rancho "Los Pocitas" was finally confirmed. Upon the confirmation of the survey of the grant, and the exclusion of this land therefrom, it became public land, subject to pre-emption. This land having never been granted by the United States to the State of California, the act of the commissioner in listing the land to the State was void, and conveyed no title.

*Moore, Laine, Delmas & Leib,* also for the Appellants.

Defendants were qualified pre-emptors, and the officers of the United States could not deprive them of their pre-emption rights. (*Tyler* v. *Green*, 28 Cal. 406; *Robinson* v. *De Forest*, 26 Cal. 317.) The listing of the land to the State did not give any title. The act of Congress of August 3, 1854 (Lester, vol. 1, p. 236, No. 249), says: "Where lands embraced in such lists are not of the character embraced in such acts of Congress, and are not intended to be granted thereby, said lists, so far as these lands are concerned, shall be perfectly null and void, and no right, title, claim or interest shall be conveyed thereby." The doctrine of prior possession is available in ejectment only in those cases where neither party has title or is in privity with the paramount source of title.

*H. F. Crane,* for the Respondent.

By the act of 1866, from and after 1869, when the land was surveyed in the field, plaintiff being in possession and claiming under his purchase (*Hodapp* v. *Sharp,* 40 Cal. 69, and *Foscalina* v. *Doyle,* 47 Cal. 437) from the State, was, by the act, given the rights of a settler upon unsurveyed land, and protected in such possession until he should have opportunity to present and prove up his claim under the act, and have the same adjudicated, viz., either approved or rejected by the proper officers.

The invasion of plaintiff's possession by defendants in October or November, 1870, and filing of declaratory statements June 29, 1871, was during a period while plaintiff's possession was legalized by the act, and during a period given him for the presentation and adjudication of his claim. The land was not subject to pre-emption during this period; the defendants were not *bona fide* pre-emptors, but were, and are, bare trespassers and intruders. The claim of plaintiff having been regularly presented, investigated and approved, and the land certified over to the State, pursuant to the requirements of the act of 1866, and by the State patented to the plaintiff, he has the title.

By the Court, RHODES, J.:

The selection and sale of the land by the State, in 1863, was void, for the reason, among others, that the lands were then unsurveyed. The plaintiff, therefore, relies for title mainly upon proceedings had under the act of Congress of July 23, 1866, to quiet land titles in California. (14 U. S. Stats. at Large, 218.) He made application under the third section of the act, on the 10th day of July, 1871, and the application was approved and the land was certified over to the State, November 15, 1871. The lands were within the exterior limits of the Rancho Los Pocitas, the claim to which had been confirmed, and the rancho surveyed before the passage of the act of July 23, 1866; but by the survey of the rancho, which was finally confirmed June 6, 1871, the lands in controversy were excluded.

The question arising upon these facts is, whether the act of July 23, 1866, confirms selections made by the State, of lands which at the passage of the act were claimed under a valid Mexican grant, but which were afterwards excluded from the rancho by the finally confirmed survey. A discussion of the question at this time is, for obvious reasons, unnecessary, and we shall only announce the conclusion to which we have arrived, upon a construction of the provisions of the act of Congress, which is, that the act does not confirm such State selections; that is to say, that the purchaser of such lands from the State is not authorized by the act to "present and prove up his purchase and claim" to the lands.

From this construction of the act of Congress, it results that the certifying and listing of the lands to the State was unauthorized and void, and that therefore the patent issued by the State did not convey to the plaintiff the title to the lands. (See Act of Congress of Aug. 3, 1854, 10 U. S. Stat. at Large.)

The plaintiff cannot maintain his action upon prior possession alone, for the lands were public lands of the United States (if not properly listed over to the State), and the defendants, as qualified pre-emptors, were authorized by law to enter upon and hold the possession of the lands as against the plaintiff.

Judgment reversed and cause remanded, with directions to enter judgment for the defendants for their costs.

Mr. Justice Crockett did not express an opinion.